UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:14-CR-094 JD |
| | ) | |
| DERRY GADSON | ) | |

## OPINION AND ORDER

Defendant Derry Gadson is charged in a fourteen count indictment with participating in a tax fraud scheme involving Banks A and B, and an investment account wire fraud scheme involving Bank C and Brokerages A, B, and C. Specifically, the indictment charged Gadson with one count of mail fraud (involving a mailed tax refund check deposited on November 27, 2012 into the Basic Funding, LLC account Gadson created at Bank A, with the refund check being in the name of MP and in the amount of $189,599.00), in violation of 18 U.S.C. § 1341 [Count 1]; one count of aggravated identity theft involving Bank A (wherein without authorization Gadson allegedly used MP's name, signature, and social security number to make MP an authorized signer of Gadson's Basic Funding, LLC account on November 12, 2012), in violation of 18 U.S.C. § 1028A [Count 2]; six counts of wire fraud (involving over $46,000.00 in direct deposits (and attempted direct deposits) of fraudulent income tax refunds to Gadson's account at Bank B by use of individual victims' social security numbers in February through July 2013), in violation of 18 U.S.C. § 1343 [Counts 3–8]; one count of aggravated identity theft involving Brokerage A (wherein on October 17, 2012, Gadson listed MP as a co-holder of an account and submitted MP's name, signature and passport without authorization to do so), in violation of 18 U.S.C. § 1028A [Count 9]; and five counts of wire fraud involving Bank C and Brokerages A, B, and C (wherein Gadson set up online investment accounts at Brokerages A, B,

and C, and then attempted to wire unauthorized funds to the tune of $1.25 million from Bank C to the brokerage accounts from May to July 2013), in violation of 18 U.S.C. § 1343 [Counts 10–14].

Now before the Court is Gadson's motion for review of pretrial detention [DE 15]. An evidentiary hearing was held on January 7, 2015. Prior to that hearing, the Court reviewed the transcript of the detention proceedings before the Magistrate Judge [DE 19], which was also offered into evidence at the January 7 hearing, during which IRS Special Agent Tonya Johnson testified. At the January 7 hearing, the government offered the supplemental testimony of Special Agent Kathryn O'Connor from the IRS, as well as several exhibits [DE 22]. Counsel also provided their respective arguments during the January 7 hearing and the Court took the motion under advisement for a written ruling. For the reasons stated below, the Court DENIES the motion to revoke detention.

## DISCUSSION

18 U.S.C. § 3145(b) permits a defendant to file a motion seeking review or revocation of a detention order when the defendant has been ordered detained by a magistrate judge. The standard of review for this Court's review of a magistrate judge's detention order is de novo. *United States v. Portes*, 786 F.2d 758 (7th Cir. 1985) (affirming the district court judge's de novo review of the magistrate judge's detention determination); *United States v. Levine*, 770 F. Supp. 460, 465 (N.D. Ind. 1991).

The Bail Reform Act limits the circumstances under which a district court may order pretrial detention. As an initial matter, the Court must determine whether release of a defendant on personal recognizance or an unsecured bond would either not reasonably assure the appearance of the person as required or endanger the safety of any other person or the

community. 18 U.S.C. § 3142(b). If such a release would not reasonably assure the Defendant's appearance or the safety of the community, then the Court must consider whether there is some condition or combination of conditions that would so assure the Court. 18 U.S.C. § 3142(c). "Pretrial detention is allowed only after the court holds a hearing and finds that 'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *Miller v. Hastings*, 87 F. App'x 585, 586 (7th Cir. 2004) (citing 18 U.S.C. § 3142(e)).

The government bears the burden of proving that the defendant is either a flight risk or a danger to the community. *United States v. Daniels*, 772 F.2d 382, 383 (7th Cir. 1985). With respect to risk of flight, the United States bears the burden of proof by a preponderance of the evidence. *United States v. Portes*, 786 F.2d 758, 765 (7th Cir. 1985). With respect to risk of safety, the United States must prove its allegations by clear and convincing evidence. 18 U.S.C. § 3142(f); *United States v. Salerno*, 481 U.S. 739 (1987). Detention may be based on a showing of either dangerousness or risk of flight; proof of both is not required. *Portes*, 786 F.2d at 765.

The factors to be considered by the Court in determining whether there are conditions that will reasonably assure the appearance of Gadson and the safety of any other person and the community include: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a minor victim, controlled substance, or firearm; (2) the weight of the evidence against Gadson; (3) Gadson's history and characteristics, including (A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense of arrest, Gadson was on

probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for another offense; and (4) the nature and seriousness of the danger to any person or the community that would be posed by Gadson's release. 18 U.S.C. § 3142(g).

In this case, the government argues both that Gadson is a flight risk and that he is a danger to the community, although the Magistrate Judge detained him only as a flight risk. The danger that the government argues Gadson poses is economic, rather than physical.[1] With respect to risk of flight, the government argues that Gadson faces likely conviction and a lengthy sentence; that he is a savvy international traveler and had booked two international flights in December 2014 after learning of the IRS' attempt to locate him; that despite his limited income he had a means by which to purchase expensive flights and hire defense counsel; and, that he has little by way of assets and no steady employment (and that his business, Basic Funding LLC, was the vehicle through which many of his fraudulent transactions were committed). The government also argues that Gadson lied to his defense counsel who represented that Gadson only booked both international flights before learning of his active warrant, when in fact Gadson booked his flight to Nigeria after having been informed by his girlfriend that the IRS was looking for him and after having been informed by the IRS itself that a warrant for his arrest had been

---

[1] The Court doubts that Gadson may be detained on the grounds that he constitutes a danger to the community under these circumstances. Several circuits have held that a defendant may only be detained as a danger to the community in cases where the crime satisfies one of the predicates under 18 U.S.C. § 3142(f)(1). *United States v. Himler*, 797 F.2d 156, 160–61 (3d Cir. 1986); *United States v. Ploof*, 851 F.2d 7, 10–12 (1st Cir. 1988); *see also United States v. Byrd*, 969 F.2d 106, 109–110 (5th Cir. 1992); *United States v. Twine*, 344 F.3d 987, 987–88 (9th Cir. 2003). The Seventh Circuit has never addressed this question, but other districts courts within the Seventh Circuit have agreed. *United States v. Chavez-Rivas*, 536 F. Supp. 2d 962, 966–68 (E.D. Wis. 2008); *United States v. Morgan*, No. 14cr10043, 2014 WL 3359430, at *4 (C.D. Ill. July 9, 2014). Although the government mentioned that Gadson's prior felony convictions for dealing in cocaine and escape may meet the criteria under section 3142(f)(1)(D), its argument for detention rests primarily on Gadson's being a flight risk. Moreover, the only details the Court has been provided concerning Gadson's conviction for escape is Gadson's own contention that he walked away from a work release program, and thus, the Court is unwilling to conclude that this conviction constitutes a crime of violence under section 3142(f)(1)(D), as defined by 18 U.S.C. § 3156(a)(4). *See, e.g.*, *Chambers v. United States*, 555 U.S. 122, 127–30 (2009) (an "escape" that takes the form of a failure to report is not a "violent felony" within the meaning of the Armed Career Criminal Act); *United States v. Templeton,* 543 F.3d 378, 383 (7th Cir. 2008) ("A walkaway is not a crime of violence under *Begay*."). However, given the Court's ultimate holding on risk of flight, the Court need not consider whether Gadson may be detained as a danger to the community.

issued. Additionally, the government has provided convincing evidence demonstrating that Gadson is a clever man who is capable of committing identity theft for the purpose of securing financial accounts and the unauthorized transfer of funds to himself, and that he has been doing so continuously since 2008. Thus, the government argues that Gadson cannot be trusted and is not likely to abide by any conditions of release that could be imposed.

Gadson, on the other hand, argues that detention is not required to reasonably assure his appearance. Through counsel, he argues that he does have substantial ties to the community, including his adult daughter and girlfriend of 22 years, and that he is a lifelong member of the community, even receiving recognition from the Mayor of Elkhart for his work with at-risk youths. The defense points out that Gadson has always returned from his travels, and even had return flights booked for his two December 2014 trips abroad. Additionally, the defense argues that Gadson could have fled the district on December 14, after being apprised of his arrest warrant; instead, Gadson voluntarily surrendered his passport on December 15 and self-surrendered on December 16. Plus, there is no evidence that Gadson ever used an alternative means of identification for himself for the purpose of travel. Finally, Gadson has no physical or mental health issues, and no problems with drug or alcohol abuse.

Based on the evidence presented, the Court makes an initial determination under section 3142(b) that releasing Gadson on personal recognizance or an unsecured bond would not adequately assure his appearance as required. Gadson likely faces a substantial sentence of incarceration if convicted (the government represents that an advisory guideline range of 156–183 months is realistic, which includes a mandatory sentence of four years on the charges for aggravated identity theft). Gadson has shown an ability to quickly (and recently) access significant funds for himself, even if by way of credit, which could be utilized to abscond, and

has shown his adeptness at international travel and ability to book last minute flights to locations not only outside of this district, but outside of the country. The Court is most troubled by Gadson's booking of a trip on December 14 to Nigeria, apparently after learning of his active arrest warrant on December 12—facts which Gadson still hasn't denied. The fact that Gadson also booked a return flight means little, given the suspicious timing of his travel plans and the fact that there's no way of knowing whether Gadson would have returned. And although Gadson surrendered his passport and then self-surrendered to authorities, the government proffers strong evidence of Gadson's sophistication in using the identification means of others, including the use of social security numbers and another's passport, to secure and personally withdraw unauthorized funds. And, there's no reason to believe he wouldn't do the same to assist his ability to flee even without his own passport. While Gadson does have substantial historical ties to this community and family members living here, the Court believes these ties are offset by the fact that he has no incentive to stay for employment or established assets, including equity in a residence. These factors convince the Court that personal recognizance or an unsecured bond would not reasonably assure Gadson's continuing presence.

Having found that release on personal recognizance or an unsecured bond is insufficient, the Court considers whether there is a condition or combination of conditions that would reasonably assure Gadson's presence as required. Considering the factors under section 3142(g), the Court notes that the charged offenses do not concern a crime of violence, nor do they involve any minor victims, an act of terrorism, controlled substances, or firearms. The weight of the evidence against Gadson appears to be significant—the government proffers a strong case of direct evidence against Gadson involving the testimony of various victims of the charged offenses, a large paper trail of Gadson's fraudulent transactions and attempted transactions

6

involving at least four million dollars, actual video recordings of Gadson's personally making unauthorized transactions, and various recorded conversations between customer service representatives and Gadson (personally and by way of his IP address) involving Gadson's attempt to secure online funds illegally. In addition, government's exhibit 1 evidences that about two dozen financial institutions have reported that Gadson's fortyish fraudulent transactions date back to July 2008 and continued through 2014, *even after* Gadson was interviewed by IRS agents in October 2013 about his suspected illegal activity.

    Gadson is 48 years old. He was born in Elkhart, Indiana, and has lived in Elkhart for his entire life, although he has no steady employment or equity in a home. He appears to be in good physical health and reports no history of any mental or emotional health issues. He lives with his girlfriend of 22 years and her son, and his adult daughter and his three siblings all live in this area. His last criminal conviction dates back to 2006, but he has a conviction for escape, which at a minimum means Gadson has previously failed to comply with a court order imposing release conditions.

    On the face of the pretrial services report, it appears Gadson's income is limited, yet Gadson has a means to financial resources as evidenced by his ability to book two international flights and hire experienced and respected counsel all within a few days in December 2014. Further, Gadson's business, Basic Funding, LLC, was the means by which his fraud was conducted. And given Gadson's history and alleged ability to generate funds by using the personal identifiers of others, there is a strong suggestion that he has the financial ability and wherewithal to escape and secrete himself if released. The Court is not aware of any history of drug or alcohol abuse by Gadson, although he does have a conviction for dealing in cocaine from

1995.  The Court believes that these factors weigh heavily in support of the conclusion that Gadson is a substantial risk of flight.

Gadson has proposed that he is willing to be subject to any conditions that the Court would feel are appropriate to reasonably assure his appearance.  Defense counsel has specifically suggested that Gadson could be released on home detention with electronic location monitoring, to reside at his residence in Elkhart.  Aside from the fact that the home currently has no landline telephone, the Court does not believe that Gadson's proposal would reasonably assure his appearance.  The Court regards location monitoring as merely a deterrence to escape—and an insufficient one for Gadson given his strong risk of flight and resources/know-how to do so quickly, before his escape could be detected and Gadson located.  After learning that federal authorities were looking to arrest Gadson in December 2014, he booked an international flight, despite not having taken other international flights in two and a half years.  He may have recently turned in his passport, but as the government's proffer strongly suggests, he has had no hesitancy in the past to repeatedly use other's identities, including their social security numbers and passports, to obtain the means necessary to flee.  Given that he allegedly continued to engage in financial fraud even after the IRS contacted him in 2013, it is questionable that Gadson is a man who is easily deterred from lawlessness, and given his prior violation of court ordered release (as well as the rest of the discussion contained herein), it does not appear he can be expected to be present in the courtroom when required to answer to these serious felony charges.  As a result, the Court finds that there is currently no condition or combination of conditions that will reasonably assure Gadson's appearance as required.

## **CONCLUSION**

For the reasons stated above, after a de novo review and based on the factors listed in 18 U.S.C. § 3142(g), the Court finds by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the presence of Gadson.  Accordingly, the Court **DENIES** the request to revoke detention [DE 15].  Based on the current record, Gadson shall remain detained pending trial.

SO ORDERED.

ENTERED:  January 12, 2015

/s/ JON E. DEGUILIO
Judge
United States District Court